KARL SCHAUB, Respondent, v. THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, October 5, 1908.

1. **RAILROADS: Crossing Collision: Contributory Negligence: Physical Facts.** The facts relating to a collision at a street crossing are reviewed and the plaintiff is held guilty of contributory negligence notwithstanding his testimony that he looked for an approaching train, since it is clearly incompatible with the undisputed physical facts and laws of the situation and therefore not sufficient to raise an issue of fact.

2. ———: ———: ———: **Presumption.** Though a railroad is negligent in failing to keep gates and watchmen at a crossing and running its trains in violation of the ordinance, still the traveler on the street is not absolved from making reasonable use of his senses to protect himself and must look and listen as a prudent person would in his place, since such crossing is itself a warning of danger.

3. ———: ———: ———: ———. Presumptions are the bats of the law flitting in the twilight but disappearing in the sunshine of actual facts and have no place where the traveler should have known the facts had he exercised ordinary care, since he has no right to rely on presumptions, but must acquaint himself with actual circumstances open to his observation.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED.

*Cyrus Crane, George J. Mersereau* and *Samuel W. Sawyer* for appellant.

(1) Plaintiff was guilty of contributory negligence as a matter of law. Fletcher v. Railroad, 64 Mo. 484; Harlan v. Railroad, 65 Mo. 22; Zimmerman v. Railroad, 71 Mo. 476; Henze v. Railroad, 71 Mo. 636; Purl v. Railroad, 72 Mo. 168; Turner v. Railroad, 74 Mo. 602; Powell v. Railroad, 76 Mo. 80; Lenix v. Railroad, 76 Mo. 86; Hixson v. Railroad, 80 Mo. 335; Fox v. Railroad, 85 Mo. 679; Kelly v. Railroad, 88 Mo. 534; Butts v. Railroad, 98 Mo. 272; Dixon v. Railroad, 104 Mo. 491; Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362; Lane v. Railroad, 132 Mo. 4; Huggart v. Railroad, 134 Mo. 673; Payne v. Railroad, 136 Mo. 562; Peterson v. Railroad, 156 Mo. 552; Hook v. Railroad, 162 Mo. 569; Van Bach v. Railroad, 171 Mo. 338; Guyer v. Railroad, 174 Mo. 344; Markowitz v. Railroad, 186 Mo. 350; Schmidt v. Railroad, 191 Mo. 215; Green v. Railroad, 192 Mo. 131; Walker v. Railroad, 193 Mo. 453; Sanguinette v. Railroad, 196 Mo. 466; Mockowik v. Railroad, 196 Mo. 550; Porter v. Railroad, 199 Mo. 82; Stotler v. Railroad, 103 S. W. 1; Duncan v. Railroad, 46 Mo. App. 198; Sims v. Railroad, 116 Mo. App. 572; Grout v. Railroad, 102 S. W. 1026; Hodgin v. Railroad, 143 N. C. 93, 55 S. E. 413; Tiffin v. Railroad, 93 S. W. 564; Lierman v. Railroad, 82 Wis. 286, 52 N. W. 91; 33 Am. St. Rep. 37; Railroad v. Keister, 163 Ind. 609, 67 N. E. 521; Barr v. Railroad, 105 Tenn. 544, 58 S. W. 849; McGrath v. Railroad, 59 N. Y. 468; Smith v. Railroad, 141 Ind. 92; 40 N. E. 270; Golinvaux v. Railroad, 125 Ia. 652, 101 N. W. 465. (2) Instruction numbered 3P, given at the request of the plaintiff, is erroneous. Nixon v. Railroad, 141 Mo. 425; Reno v. Railroad, 180 Mo. 483; Green v. Railroad, 192 Mo. 131; Bragg v. Railroad, 192 Mo. 331; Mockowik v. Railroad, 196 Mo. 550; Stotler

v. Railroad, 103 S. W. 1; Grout v. Railroad, 102 S. W. 1026.

*Laughlin & Kenworthy,* for respondent, filed argument.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries alleged to have been caused by the negligence of defendant. He had judgment in the sum of eight hundred dollars and defendant appealed. The injury occurred on August 1, 1905, at the intersection of defendant's railroad and Holmes street in Kansas City. The street runs north and south and crosses defendant's tracks—two in number—at a right angle. At about half past six o'clock in the evening, plaintiff, accompanied by a Mr. Hageler, drove south on Holmes street in a one-horse buggy and, as they neared the crossing, looked for some warning of the approach of a train. Defendant maintained a watchman at this place but no gate. Plaintiff and his companion observing that the watchman was not present looked up and down the railroad, saw no train, and drove forward to the crossing. When the horse reached the south track, Hageler became aware that a passenger train was coming from the west and was so close to the crossing that a collision was inevitable. He exclaimed in German, "We are done," and at this, plaintiff glanced up, saw the train for the first time and attempted in vain to escape by hurrying the horse. The engine struck the hind end of the vehicle and threw the plaintiff out, inflicting severe personal injuries. It is alleged in the petition that ordinances in Kansas City in force at the time required defendant to maintain gates at this crossing and to keep a watchman there and forbade the running of trains at a higher rate of speed than six miles per hour. The negligence charged is "first, in failing to provide gates, or to have a watchman or other person stationed at said crossing to give warning to

plaintiff of the approach of said train of cars. Second, in moving said train of cars at a greater rate of speed than six miles an hour over Holmes street at said crossing. Third, in failing to sound the whistle or ring the bell within eighty rods of said crossing on Holmes street." The answer contains a general denial and a plea of contributory negligence.

We are of opinion that the court erred in refusing defendant's request for an instruction peremptorily directing a verdict in its favor. The evidence, in its aspect most favorable to plaintiff, convicts him of negligence in law and demonstrates beyond peradventure that his own negligence directly contributed to his injury. In giving our reasons for this conclusion, we concede for argument, that defendant was negligent in not having gates at the crossing and a watchman there at the time in question to warn travelers on the street of the approach of trains; and further, that defendant was negligently running its train at from twenty to twenty-five miles per hour in violation of the city ordinance. But these concessions do not avail plaintiff anything since the indisputable facts of the situation show that the injury would have been avoided had he exercised reasonable care for his own safety.

The tracks of defendant are laid in Second street and run straight east and west. A two-story building was at the northwest corner of the intersection of the two streets. The north rail, of defendant's north track was 24.2 feet from the south wall of this building, and the north rail of the south track was thirteen feet farther south. About two hundred feet west of Main street, the tracks run through a cut. The foot of the bank on the north side was about six feet from the north track and about twenty feet from the south track and the face of the bank sloped backward from its base. Plaintiff and his companion testified that they drove the horse in a walk while approaching the crossing.

They were going up grade and the train was coming down grade on the south track. When they emerged from behind the building we have described, there was nothing to obstruct their view of the south track to a point far beyond the beginning of the cut. The train then could not have been more than two hundred feet from the crossing, was in plain sight, and they were in a place of safety. It appears that the distance between the head of the horse and the plaintiff's position in the buggy was about nine feet. Therefore, when plaintiff might have had his first view of the train, the horse, which was gentle and under complete control, was twenty-five feet from the danger line. There is no substantial evidence contradicting the statement, of defendant's witnesses that the bell of the engine was being rung by an automatic bell ringer. We insert on next page a photograph introduced in evidence which accurately portrays the scene of the injury.

With facts and circumstances such as these before us, we must reject as wholly barren of any probative value the statement of plaintiff and his companion that they looked to the west as soon as they came from behind the building and saw no train. If they looked, they must have seen the train since, as we have said, it could not have been more than two hundred feet away and there was no obstruction to their line of vision.

It has been decided again and again by the courts of last resort in this State that when the testimony of witnesses is clearly incompatible with the indisputable physical facts and laws of the situation, courts will not hold such testimony sufficient to raise an issue of fact, but will disregard it as a thing palpably false. Plaintiff either did not look in the direction of the advancing train or, looking, did not give heed to what he saw. In either case, he was guilty of negligence which will preclude him from a recovery in this action.

Schaub v. Railroad.

But it is argued that he was justified in presuming from the absence of the watchman that the way was clear and, further, was justified in presuming that a train would not be run at a higher rate of speed than six miles per hour. The absence of the watchman, though it may have indicated to plaintiff that he was in his "dog house" and that the crossing was clear, gave plaintiff no right to shut his eyes and rely implicitly on the presumption that the watchman was at his post and was doing his duty. A railroad crossing is a place of danger; is in itself a warning signal, and in approaching it, a traveler on a public street must always make reasonable use of his senses to protect himself. When from a position of safety he may see and hear, he must look and listen, since this is what an ordinarily prudent person would do in his place. [Edwards v. Railway, 94 Mo. App. 36; McNamara v. Railway, 126 Mo. App. 152.] Plaintiff had no right to rely on the conclusion he might have drawn from the absence from view of the watchman, and his own statement of what he did shows that he did not act on it. He says he did look and no train was in sight and he is bound by this admission that he did not permit himself to be lulled into a false sense of security by the presumption now invoked. Pertinent to the discussion of the question as to whether he was entitled to indulge in any presumption at all from what he saw at the crossing is the following extract from the opinion of the Supreme Court in Mockowik v. Railroad, 196 Mo. 550: " 'Presumptions,' as happily stated by a scholarly counselor, *ore tenus*, in another case, 'may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts.' That presumptions have no place in the presence of the actual facts disclosed to the jury, or where plaintiff should have known the facts had he exercised ordinary care, is held in many cases, of which samples are, Reno v. Railroad, 180 Mo.

l. c. 483; Nixon v. Railroad, 141 Mo. l. c. 439; Bragg v. Railroad, 192 Mo. 331. To give place to presumptions, on the facts of this case, is but to play with shadows and reject substance."

On the subject of whether plaintiff was entitled to assume that the train would not be run at an excessive rate of speed, we repeat what we said recently in Grout v. Railway, 125 Mo. App. l. c. 559: "He was justified in indulging in this presumption but as we have recently declared in a number of cases, this did not absolve him from the performance of the duty of attending to his own safety. He had no right to rely solely on a presumption, but should have used his senses to acquaint himself with the actual circumstances open to his observation, and had he done this, it is very clear, he would not have entered into danger. Had he looked at the car with any degree of attentiveness, he could have seen that it was coming at a high rate of speed, and had he looked again before entering the sphere of danger, he would have known that it was highly dangerous for him to attempt to cross. The thing that brands his conduct as censurable in law is the fact that with the car in striking distance, and with every opportunity to protect himself, he blindly risked his life and limb on a mere presumption that others would be more careful than he."

The judgment is reversed. All concur.