MARY SLOAN et al., Appellants, v. LOYAL FRATER-
NAL HOME ASS'N, Respondent.

Kansas City Court of Appeals, November 15, 1909.

1. FRATERNAL BENEFIT SOCIETIES: Organization: Certifi-
cate of Secretary of State. A fraternal beneficiary association
does not become a corporation with power to issue benefit
certificates until the Secretary of State issues a certified copy
of the articles of agreement.

2. DISSOLVED SOCIETY: Obligation of Society Subsequently
Formed. Where the deceased was a member of a fraternal
beneficiary ·society and had a benefit certificate therein and
such society dissolved, the certificate does not become obliga-
tory on an association subsequently formed.

3. RECEIPT OF DUES BY SUBSEQUENT CORPORATION. Re-
ceipt of dues from a beneficiary in such dissolved association
by officers of the new association prior to its becoming ·incorpo-
rated, will not make the latter corporation liable on the certifi-
cate.

4. NECESSITY OF MEMBERSHIP. Beneficiary associations can
only issue beneficiary certificates to members of the society.

5. RATIFICATION: Estoppel. In such case there is no room for
application of ratification or estoppel.

Appeal from Clinton Circuit Court.—*Hon. A. D.
Burnes,* Judge.

AFFIRMED.

*W. R. Cress* and *W. S. Herndon* for appellants.

The defendant obtained its *pro forma* decree of in-
corporation on the 6th of September, 1906. The articles
of association were filed and recorded in the recorder's
office that day and were filed in the office of the Secre-
tary of State and a copy issued by that officer on the
8th of the same month. Its corporate existence was
complete on the 8th of September, 1906. R. S. 1899,
sec. 1395. Even though the defendant's corporate exist-

tence was not complete at the dates mentioned in the petition and evidence, it is estopped, under the facts in this case, to deny its corporate existence, both on the ground of estoppel and subsequent ratification of the acts of its agents and officers. Roll v. St. Louis, etc., Co., 52 Mo. App. 67; Rinehart v. Mining Co., 107 Mo. 623 1. c.; Ragan v. McElroy, 98 Mo. 340; Mining Co. v. Richards, 95 Mo. 112; Brogroffe v. Knights of Honor, 26 Mo. App. 225; Bank v. Bank, 107 Mo. 133; Bank v. Fricke, 75 Mo. 78. The retaining of the money paid by Sloan was a ratification of the acts of Mr. Filson. Winscott v. Guaranty Inv. Co., 63 Mo. App. 367; Pitts v. D. M. Steel Mer. Co., 75 Mo. App. 221. The defendant assumed a corporate name, exercised corporate powers, performed acts and contracted as a corporation. It is therefore estopped to deny its corporate existence and liability as such. 2 Bacon, Benefit Societies, sec. 424; Bararo v. Occidental Grove, 4 Mo. App. 434; Express Co. v. Bradbury, 34 Ill. 466; Stoddards v. Onondago Annual Conference, 12 Barb. 573; Scheufler v. Grand Lodge, 45 Minn. 256, 47 N. W. 799; 2 Bacon, Ben. Soc., 429b, citing, Perrine v. Grand Lodge A. O. U. W., 48 Minn. 82, 50 N. W. 1022; Burlington, etc., Assn. v. White, 41 Neb. 561, 59 N. W. 571. Mr. Filson was secretary of the local lodge at Cameron when it was a subordinate lodge of the "Fraternal Home," and also when it became a subordinate lodge of the defendant. He was also supreme treasurer of the defendant, being named as such in the articles of association, and on the 12th of October, 1906, resigned that office. The deceased did all things required of him, by the defendant, up to the time of his death, to keep his insurance in force, and the defendant, by its officers, directed him what to do. The receipt and retention of the dues paid it by Sloan is both a waiver of the defenses set up in the answer and an estoppel to plead them. Read v. Bankers Union, 120 Mo. App. 419; Cline v. Sovereign Camp, 111 Mo. App. 601; St. Louis Police Relief Ass'n v. Tremy, 116

Mo. App. 447; Herzberg v. Brotherhood, 110 Mo. App. 334; Webber v. Ancient Order of Pyramids, 104 Mo. App. 729. The defense of *ultra vires* is not pleaded. A mere denial of the power to make a contract is not an affirmative defense. Neither can the defense of violation of a by-law of the defendant be considered, because no by-law is pleaded. Webber v. Ancient Order of Pyramids, 104 Mo. App. 729. The defense of *ultra vires* is not available to respondent, the contract having been fully executed by Sloan and not prohibited by law. Winscott v. Guaranty Inv. Co., 63 Mo. App. 367.

*W. N. Fitch* for respondent.

Michael T. Sloan died September 28, 1906. Articles were filed with the Secretary of State September 8, 1906, and he issued certified copy November 30, 1906. The Loyal Fraternal Home was not a corporation at the time of the death of Michael T. Sloan. R. S. 1899, sec. 1395. If any act is essential to the formation of a corporation, the omission of such act is fatal to the formation of such corporation. Granby Mining Co. v. Richards, 95 Mo. 110; quoting from Mining Co. v. Woodbury, 12 Cal. 424; Hurt v. Salisbury, 55 Mo. 311; Richardson v. Potts, 71 Mo. 128; Queen City Fur. & Car. Co. v. Crawford, 127 Mo. 364-5; Bank v. Rockefellow, 195 Mo. 41. The Loyal Fraternal Home was organized to insure the living, not the dead. R. S. 1899, sec. 1408; See Charter, Record 16; Hiatt v. Fraternal Home, 99 Mo. App. 115. A fraternal benefit society is bound by the limitations placed upon it by the statutes and its charter. Their actions in excess of those limitations are void. Edmonds v. M. W. A., 125 Mo. App. 219; Wagner v. Francis Xavier Society, 70 Mo. App. 161; Ferbarcke v. A. O. U. W., 81 Mo. App. 268; Hoffman v. B. F. L. F., 73 Mo. App. 55; Lester v. Lester, 73 Mo. App. 99. The Fraternal Home being a fraternal beneficiary association, it had no power to issue the certificate sued on. The

beneficiary is not within the class mentioned in section 1408, Revised Statutes 1899. In Dennis v. Modern Brotherhood of America, 119 Mo. App. 214, we find the following language, viz: "No one can become a beneficiary in a Fraternal Beneficiary Society who does not belong to some of the classes of persons named as beneficiaries in the statutes." Masonic Benefit Soc. v. Bunch, 109 Mo. 560; Keener v. Grand Lodge, 38 Mo. App. 543; Herzberg v. Modern Brotherhood of America, 110 Mo. App. 328.

ELLISON, J.—Michael T. Sloan was a member of "The Fraternal Home," beneficiary association which, among other things, issued benefit certificates to members for the benefit of their legal heirs. He became a member and received his certificate in March, 1900, for the sum of $2,000, payable at his death. He continued a member up to and including part of the year 1906. He died September 28, 1906, and his status with that company and with this defendant, called the Loyal Fraternal Home, is a matter of contention between the parties. This action was brought by his widow and children against the present defendant as the Loyal Fraternal Home, and upon trial the circuit court gave a peremptory instruction to find against them and they have brought the case here.

The petition is in two counts. The first one alleges the existence of the Fraternal Home and Sloan's membership therein, with beneficiary certificate down to "the first week in September, 1906." It then alleges that on the 31st of July, 1906, the Fraternal Home transferred its assets, reserve fund and other property to the Kansas City Life Insurance Company under a contract with the latter "to continue the insurance of the members of the said Fraternal Home, and that thereafter the Fraternal Home abandoned its organization and ceased to do business." The petition then alleges that on the 23rd of August, 1906, the defendant organized as a fraternal

beneficiary association and began doing business as such and that it sent circulars, letters and newspapers to Michael T. Sloan containing statements that it would carry and continue his life insurance in the Fraternal Home at the same rates. That said Sloan, relying upon said statements, paid to defendant all assessments due from him under his certificate with the Fraternal Home from and after the first week day in September, 1906, until the date of his death, the 28th of September, 1906. It is then alleged that defendant agreed to insure the life of Sloan for the benefit of plaintiffs in the sum of $2,000. It is then alleged that proofs of death were made, etc.

The second count restates the matters stated in the first count except that it states that this defendant, in consideration of certain dues and assessments paid by Michael Sloan, assumed the payment of the certificate made by the Fraternal Home.

We thus have the statement from plaintiffs that the Fraternal Home abandoned its organization on the 31st of July, 1906, after reinsuring its members in the Kansas City Life Insurance Company. That in a few weeks thereafter (23rd of August, 1906) this defendant organized and began to do business and sent circulars to Sloan stating that it would carry and continue the insurance he had made with the disorganized association; and that he accepted such statement and paid to this defendant all assessments or claims due from him to the original disorganized association from and after the first week day in September, 1906, to the date of his death, on the 28th of that month.

The proof of these payments was in this way: F. M. Filson had been secretary of the Fraternal Home prior to its disorganization on July 31st, and he was made secretary of this defendant when it is said to have organized on the 23rd of August following. Sloan sent him by letter of 29th of August, 1906, the dues of membership up to first week in September and in acknowl-

edging receipt of the payment, on September 6th, Filson wrote "You can still continue to send your money to me, as we have reorganized and I am still secretary of your local lodge as well as supreme treasurer of the Supreme Lodge."

On the 26th of September, two days before his death, Sloan sent to Filson dues for October. This was acknowledged by letter dated after Sloan's death.

So as to see what effect this evidence should be allowed as against this defendant, it will be necessary to consider the evidence establishing its organization, or, in other words, establishing its legal entity. The statute, secs. 1394 and 1395, R. S. 1889, make certain prerequisites to the organization of such association: There must be articles of agreement between not less than three persons; the persons forming these articles of agreement elect officers, and they must submit the articles to the circuit court with a petition praying for a decree of organization; the court, if properly satisfied, then makes its formal decree which is attached to the articles of agreement; the articles must then be recorded by the recorder of deeds of the county where the association is located; the articles must then be filed with the Secretary of State; that officer then issues to the petitioners a certified copy of the articles, with the several certificates thereon, "which certified copy shall be the charter of incorporation; and thereupon the petitioners, their associates and successors, shall be created and be a body corporate and politic, by the corporate name designated in such charter, and such charter, together with this article, shall be received in all courts and places as legal evidence of the incorporation of such association."

A proper number of persons did sign articles of agreement and elect officers who presented the articles to the circuit court, and that court, on the 6th of September, 1906, entered the decree of incorporation. They also filed the articles and copy of decree with the record-

er of deeds on that day. They then filed them with the
Secretary of State on September 8, 1906, and that officer
put the following endorsement thereon: "Filed and
copy issued September 8th, 1906." The Secretary of
State afterwards, on the 30th of November, 1906, as re-
quired by the statute above cited, issued to the petiti-
oners a certified copy of the articles with the certificates
thereon.

That portion of the statute above quoted makes the
certificate of the Secretary of State the final act of in-
corporation. The petitioners are "thereupon," that is,
upon the issuance of Secretary of ·State's certificate,
created and become a corporate body. The word "there
upon" may have different meanings dependent upon the
connection in which it is used, but no lexicographer or
court has ever allowed it to mean a time *before* the act
upon which it is predicated. In this instance its mean-
ing is clear; it is that upon the issuance of the certified
copy of the articles with prior certificates attached, the
association becomes a body corporate. The certified
copy from the office of the Secretary of State is the nec-
essary and final act creating the corporation.

· We then have this condition of case: Plaintiffs de-
pend upon acts or promise of defendant as a corpora-
tion before there was a corporation. Those acts, as
shown above, were principally in receiving payment of
dues from Michael T. Sloan on September 6th and 26th,
at which dates defendant had not come into existence,
and it was without power or authority to accept the de-
ceased beneficiary of the other company; or, as claimed
by plaintiffs in the second count, to assume the payment
of the certificate issued by the other company. We are
of the opinion that the certified copy of the articles of
agreement by the Secretary of State is the act bring-
ing the corporation into existence and that prior to that
time it had not the power to enter into a prosecution ot
the business for which it was formed. [Hurt v. Salis-

139 App—29

bury, 55 Mo. 311; Granby Mining Co. v. Richards, 95 Mo. 105, 110; Furniture Co. v. Crawford, 127 Mo. 356; National Bank v. Rockefeller, 195 Mo. 15, 41.]

Under the law and rules of these statutory beneficiary associations, the benefit certificates are issued only to members of the association under certain prescribed conditions for initiation. [Hiatt v. Fraternal Home Assn., 99 Mo. App. 105.] We do not find where the deceased ever became a member of the defendant body whereby he might have a right to claim its protection.

Nor do we find any ground upon which the defendant can be held under the doctrine of estoppel. Nor do we discover where there has been any ratification.

An examination of the record shows that none of the several grounds relied upon by plaintiffs will support the action, and the judgment is accordingly affirmed. All concur.