MARY A. FISHER, Respondent, v. SUPREME
LODGE KNIGHTS AND LADIES OF HONOR,
Appellant.

**St. Louis Court of Appeals, May 4, 1915.**

1. **TRIAL PRACTICE: Order of Introducing Evidence: Documents Referred to in Cross-Examination.** The trial court's refusal to allow a defendant to introduce in evidence documents offered during the cross-examination of a witness for plaintiff, on the ground that orderly procedure required that defendant wait until it put in its defense before it introduce its evidence, was not error.

2. ———: **Demurrer to Evidence: Effect of Failure to Stand on Demurrer.** A defendant does not, by introducing evidence after the overruling of his demurrer to plaintiff's evidence, waive his demurrer, but the propriety of the ruling must be determined with reference to all the evidence adduced, regardless of who offered it.

3. **FRATERNAL BENEFICIARY ASSOCIATIONS: Proofs of Death: Waiver.** Where a fraternal beneficiary association denied liability on a death benefit certificate on the ground that the person named in the certificate never became a member of the association, it was not essential to plaintiff's case, in an action on the certificate, to show that proof of death had been made.

4. ———: **Evidence of Membership: Issuance of Benefit Certificate.** The issuance of a benefit certificate by a fraternal beneficiary association is prima-facie evidence of the holder's membership, and the burden is on the association to establish the contrary.

5. ———: **Initiation of Member: By-Laws Construed: Estoppel to Deny Membership.** A by-law of a fraternal beneficiary association, providing that no benefit certificate shall be issued until after the applicant has been initiated in some lodge or obligated in the first degree, does not require that a person shall be initiated to become a member, but he becomes a member by being obligated; and where a person is so obligated and a benefit certificate is issued to him and the association thereafter treats him as a member and receives his dues and assessments, the association is estopped to deny that he did not become a member.

6. ———: **Action on Certificate: Instructions: Applicability to Evidence.** In an action on a death benefit certificate issued by a fraternal beneficiary association, plaintiff testified that her husband, the deceased member, signed the application in his own hand and that she had taught him to sign his name. Experts introduced by defendant testified that plaintiff signed her husband's name to the application. The court instructed, at the instance of plaintiff, that if decedent did not sign the application, but his name was signed by some other person, and he adopted it as his own, his act had the effect of ratifying the signature as if written with his own hand. *Held*, that it is inferable from the evidence that, if decedent did not sign the application himself, he adopted the signature appearing thereon, and hence the instruction is not vulnerable to the objection that it is not supported by the evidence.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

Affirmed.

*Chas. F. Krone* and *Aug. Walz, Jr.,* for appellant.

(1) Where a contract is the basis of a suit, it must be shown, not in part, but in its entirety, and where by the terms of the benefit certificate, or by the terms of the preceding application for membership and accompanying medical examination, or either of these papers, each is made part of the other and of the benefit certificate, they constitute all together, the contract of insurance, in its entirety, and all of them must be introduced in evidence by the plaintiff in chief, in order to make a prima-facie case on the petition. And if not introduced in chief, defendant, at least, should be permitted to show the whole contract by way of cross-examination of plaintiff's witnesses in chief. This is assuredly so in view of section number 9 of the Act approved, March 30, 1911, and found in Laws of Missouri, 1911, page 284. Brittenham v. W. O. W., 180 Mo. App. 523-534; Loyd v. Modern U., 113 Mo. App. 19; Coscarella v. Insurance Co., 175 Mo. App. 130-138; Norristown v. Hancock, 132 Pa. St. 385;

More v. Union, 103 Iowa, 424; Protection Ins. Co. v. Foote, 79 Ills. 361; Treat v. Merchants, 198 Ills. 431; National Bank v. Ins. Co., 95 U. S. 563; Moulor v. American I. Co., 111 U. S. 335. (2) The insured, as well as the beneficiary, is bound by the laws of the order, and where, as is here the case, these laws require that proofs of death be made before a recovery can be had, and where plaintiff's petition itself, as is also here the case, expressly pleads that proofs of death have been made, by her, then and in such a case, it is necessary for plaintiff to show that proofs of death have been made in order to make a prima-facie case on the petition. There is no evidence anywhere in the case that proof of death was made. Shell v. Insurance Co., 60 Mo. App. 644; Davis v. Davis, 49 Maine 282; Jackson v. Southern, 36 Ga. 429. (3) The statutes of this State, providing for the creation of fraternal beneficiary associations, require them to have a lodge system with ritualistic forms of work, and that "members shall be elected, initiated and admitted" into them in accordance with their constitutions, laws, rules, regulation and prescribed ritualistic ceremonnies." These statutory requisites are essentials which cannot be waived either by the local or general officers of an order, and no person can become a member without being initiated, nor can the person named in the benefit certificate issued upon the life of an uninitiated person, have any right to recover thereon. Initiation is condition precedent of membership, nor can it, as a statutory prerequisite be waived by officers whoever they may be. Gilmore v. Modern Brotherhood, 171 S. W. 629; Porter v. Loyal Americans, 180 Mo. App. 538; Schartle v. Modern Brotherhood, 139 Mo. App. 433; Sloan v. Loyal, 139 Mo. App. 443; Hiatt v. Fraternal, 99 Mo. App. 105; Loyd v. Modern Woodmen, 113 Mo. App. 20. (4) Where the laws of the fraternal beneficiary association itself provide that no benefit certificate shall be issued until the person

whose life is insured shall have been initiated into some
lodge of the order, and where the application provides
that neither its acceptance nor the payment of the
initial assessment and medical examiner's fee shall
entitle the applicant or his beneficiary to participate
in the relief fund until his medical examination has
been approved by the supreme medical examiner and
until he shall have been initiated, and the initiation
must be had in lodge session, no recovery on the benefit
certificate is possible where the person upon whose life
it is written has not in fact been initiated. Loyd v.
Modern Woodmen, 113 Mo. App. 20-39; Porter v. Loyal
Americans, 180 Mo. App. 538-543-546; Schartle v. Mod-
ern Brotherhood, 139 Mo. App. 433-439; Sloan v. Loyal,
139 Mo. App. 443-450; Hiatt v. The Fraternal, 99 Mo.
App. 105-114; 1 Bacon Benefit Societies, page 666; 1
Bacon Benefit Societies; page 121, 63A; Matkin v. Sup.
Lodge, 82 Tex. 301. (5) Where, as is here the case, the
defendant's answer denies decedent's compliance with
the laws of the order and pleads a law requiring all ap-
plicants to submit themselves for medical re-examina-
tion if they have taken sick within thirty days after
their application, and where the plaintiff's reply ex-
pressly admits such by-law under the terms of which
no recovery could be had without such re-examination,
and where, as is here the case, the undisputed evidence
shows that the deceased applicant was sick some fifteen
days thereafter and plaintiff denies he was sick when
he made application, the defendant is entitled to an
instruction that if the jury find the facts as herein
stated, they must find for the defendant. (6) It is
reversible error to submit a case to the jury under
instructions which embody a theory not supported by
any evidence, and it was such error, in this case, for
the court to give instructions number 3 and number
4, both of which falsely assume that there was evi-
dence that the deceased applicant had authorized some-

190MA39

one else to sign his application for him, or had subsequently adopted or ratified a signature made by another. Under the evidence in this case, deceased either signed himself or he did not, and, if he did not, whoever signed for him signed without either his previous authority or subsequent approval and there was no room for these instructions. Beauchamp v. Higgins, 20 Mo. App. 514; Colliott v. Amer. Mfg. Co., 71 Mo. App. 165; Moore v. Hawk, 57 Mo. App. 495. (7) Initiate means ''to introduce by preliminary instruction or forms; guide primarily; admit formally; induct, as to initiate a person into an art or into a society.'' Century Dictionary, 3100. ''The initiated, those who have been formally instructed on any particular subject or on the theories of any particular association, especially a secret one; specifically, in the early church, those who had been baptized and admitted to the full privileges of the church and to a knowledge of the more exalted teachings of Christianity.'' Century Dictionary, 3100. ''In cases of children and much more so in the case of strangers, a special initiation was required before any person could be admitted as a member of the household.'' Century Dictionary (Initiation, 3100), quoting Hearn, the Aryan Household. This author uses ''household'' to signify what is often called the ''patriarchal family,'' to distinguish it from the ''clan.'' Initiate: To introduce into a society or organization; to confer membership on; especially, to admit to a secret order with mysterious rites or ceremonies. The Athenians believed that he who was initiated and instructed in the mysteries would obtain celestial honor after death. Webster's Dictionary. (8) Where, by the terms of the contract, the actual personal signature of the medical examiner and of the applicant for membership is required it is error to instruct upon the theory that another might have made the signature with the authority, or with the subsequent approval of the applicant; and where there is evidence of doubt up-

on the signature, it is error to refuse instruction requiring the jury to find that there must have been an actual personal signature before they can find a verdict for plaintiff. The requirement of a personal signature is a reasonable one and must be enforced. Globe Acc. Ins. Co. v. Reid, 19 Ind. App. 203; Sommers v. Kansas, 42 Kas. 619; Home Mut. v. Reil (Pa. St.), 17 Atl. 36; Fulton v. Metropolitan, 19 N. Y. Supp. 470; Prudential v. Cummins, 19 Ky. L. 1770; 445 S. W. 431; Sullivan v. Industrial, 73 Hun, 319; Pickett v. Metropolitan, 46 N. Y. Supp. 693; Whitmore v. Sup. Lodge K. & L., 100 Mo. 36. (9) The court erred in defining initiation in instruction number 2 and erred in telling the jury that if the applicant received the customary obligation and passwords and paid all assessments and dues and had an approved medical examination, then he was initiated, even though permitted to retire from the lodge without receiving the ritualistic work which he was assured he might receive at a subsequent meeting, especially in view of an express by-law to the contrary.

*Williams & Rollins* for respondent; *Thos. J. Dixon* and *N. C. Fisher* of counsel.

(1) A defendant who introduces testimony after the overruling of his demurrer to the plaintiff's evidence thereby waives his demurrer, and his liability must be determined from all the evidence in the case. Therefore, if the application for membership, the medical examiner's certificate, and the defendant's by-laws were a part of the contract of insurance in this case and should have been put in evidence by the plaintiff, her failure to do so was cured when these documents were placed in evidence by the defendant, and its liability must be determined from all the evidence. Merrieless v. Railroad, 163 Mo. 486; Semple v. United Rys. Co., 152 Mo. App. 18; Brock v. St. Louis Transit Co., 107 Mo. App. 109; Fry v. Railroad, 200 Mo. 377. (2)

When an insurance company denies all liability under the policy certificate or contract, no proof of death is necessary. United Zinc Co. v. Genl. Accident Assurance Co., 144 Mo. App. 380; Welsh v. Chicago Guaranty Co., 81 Mo. App. 30; Hayes v. Continental Casualty Co., 94 Mo. App. 10; Cauveren v. Ancient Order of Pyramids, 98 Mo. App. 433; Weber v. Ancient Order of Pyramids, 104 Mo. App. 729; Phoenix Ins. Co. v. Center, 31 S. W. Tex. 446; Siegle & Son v. Phoenix Ins. Co., 107 Mo. App. 456; Vining v. Franklin Ins. Co., 89 Mo. App. 311; Siegle & Son v. Badger Lumber Co., 106 Mo. App. 110; Amer. & Eng. Ency. Law (2 Ed.), 345; 2 May on Ins. (4 Ed.), sec. 469; Orlander on Ins. (2 Ed.), secs. 223-352. (3) A party cannot complain of an error which he himself invites, nor can he complain of an instruction which is in substance the same as one asked for by him. Whitmore v. Knights & Ladies of Honor, 100 Mo. 36; Blom-Collier v. Martin, 90 Mo. App. 596; Phelphs v. Salisbury, 161 Mo. 1; Gregg v. Roaring Springs Co., 97 Mo. App. 44; Welsh v. Chicago Guaranty Life Soc., 81 Mo. App. 39. (4) There is no issue between the parties in this case as to what facts were sufficient to constitute an initiation, and if there was any error in the instruction given covering this feature of the case it was invited by instruction number 2-A, offered by the defendant, which is, if anything, more favorable to the plaintiff than the one given. (5) A person may adopt and ratify his signature, made by another for him, and give it the same legal effect as though it were made by himself. Sommers v. Kansas Protective Union, 42 Kan. 619; Home Mutual Ins. Co. v. Riel, 17 Atl. 36; Manhattan Life Ins. Co. v. Alexander, 35 N. Y. Sup. 325; Tunison v. Chamberlin, 88 Ill. 378.

ALLEN, J.—This is a suit upon a benefit certificate issued by the defendant, a fraternal beneficiary corporation, on December 4, 1906, to Albert H. Fisher,

the husband of this plaintiff, and in which plaintiff is named as beneficiary. The maximum amount of insurance named therein is $1000, but the certificate provides that if death of the member insured shall occur within one year after the date thereof, the beneficiary shall be entitled to receive only one-third of such amount. Plaintiff's husband died on January 13, 1907, all dues and assessments payable by him to defendant order having been paid to the time of his death.

This suit was instituted on September 6, 1907, and the case has had two trials below. The second trial, before the court and a jury, resulted in a verdict and judgment in plaintiff's favor for the amount provided to be paid where death occurs within one year, to-wit, $333.33 with interest thereon from the date of the institution of the suit, the total being $446; from which judgment the defendant prosecutes this appeal.

It is unnecessary to state even the substance of the pleadings, which are lengthy, or to rehearse the evidence in detail. We shall merely make such reference to the pleadings and proof as may be necessary to the determination of the questions involved in the appeal.

It is undisputed that plaintiff's husband died of tubercular laryngitis. Defendant contended below that Fisher was suffering from the disease at the time of the issuance of the benefit certificate sued upon, and that he gave false answers to questions relating to the condition of his health and prior treatment received by him, propounded to him in the course of his medical examination in connection with his application for membership in the order. Much of the testimony relates to this phase of the controversy, which is out of the case on appeal. It is tacitly conceded that the matter is now concluded by the jury's verdict, for the assignments of error pertain to other questions to be presently noticed.

I. The point is made that the trial court erred in refusing to permit defendant's counsel to introduce in evidence the original application for membership, the medical examination of the deceased, and certain by-laws of defendant order, when offered during the cross-examination of a witness for plaintiff. And it is argued that these documents formed a part of the contract of insurance; and that since plaintiff did not put them in evidence she failed in her proof, and that therefore defendant's demurrer to the evidence should have been sustained at the close of plaintiff's case.

But these papers were subsequently put in evidence by the defendant. The objection to their introduction, when offered during the cross-examination of plaintiff's witness, was sustained solely upon the ground that orderly procedure required defendant to wait until it was into its defense before introducing its evidence. There was no error in this. And if there was any error in overruling the demurrer at the close of plaintiff's case because of the lack of this evidence, such error is not here available to the defendant. While defendant did not, by introducing evidence, waive its demurrer, the propriety of the action of the lower court in overruling defendant's demurrer and sending the case to the jury, is now to be determined with regard to all of the evidence adduced, no matter by whom offered.

II. A further argument is that plaintiff failed to make out a prima-facie case by failing to adduce evidence that proofs of death had been furnished. Though the petition avers that proofs of death were furnished defendant on forms prescribed by it, there is no evidence in the record touching the matter. But defendant denied liability on the benefit certificate for the alleged reason, among other things, that Fisher never became a member of defendant order. Such has been defendant's attitude throughout, and the point is

pressed with much force on appeal. The furnishing of proofs of death would have been a wholly useless formality, in view of the attitude assumed by defendant; and hence it was not essential to plaintiff's case to show that such proofs had been made. [See Cullen v. Insurance Co., 126 Mo. App. 412, 104 S. W. 117; United Zinc Co. v. Accident Ins. Cor. Co., 144 Mo. App. 390, 128 S. W. 836; Walker v. Knights of Maccabees, 177 Mo. App. 50, 163 S. W. 274; Keeton v. National Union, 178 Mo. App. l. c. 508, 165 S. W. 1107.]

III. The answer sets up that Fisher never became a member of the order for the reason that he was never initiated therein in accordance with its laws. Touching this matter there is a vast deal of evidence in the record *pro* and *con,* the details of which it is unnecessary to notice. There is substantial evidence tending to show that defendant's by-laws were complied with in this respect and that Fisher became and was a member of the order. In this connection it should be borne in mind that the benefit certificate is prima-facie evidence of his membership in the order, and the burden was on the defendant to establish the contrary. [See Mulroy v. Knights of Honor, 28 Mo. App. 463; Keily v. K. of F. M., 179 Mo. App. 615, 162 S. W. 682.] The presumption is that defendant would not have issued its certificate to one not a member and who could not lawfully receive it.

A by-law of defendant order shown in evidence provides that "no benefit certificate shall be issued by the supreme secretary until after the medical examination shall have been approved by the supreme medical examiner, and the person has been initiated in some lodge of this order or obligated in the first degree." Evidence adduced in plaintiff's behalf tends to show that Fisher went from his home with one Warren who had solicited him and his wife to become members of the order, and attended the organization meeting of the

local lodge in question at a hall a few blocks from Fisher's home; that Fisher, at Warren's request, was obligated early in the evening before the other prospective members were obligated, in order that he might return to his home to care for his children while his wife attended this same meeting for the purpose of becoming a member of the order.

The fact that Fisher left his home with Warren for this purpose was testified to by plaintiff and other witnesses present at the time. It was stipulated by counsel that Warren, if present as a witness at this last trial, would testify that he so accompanied Fisher to the lodge hall and, "in the presence of numerous persons then and there assembled, saw and heard said Fisher obligated under the ritual obligation of the defendant, by John D. O'Keefe, the then grand protector of Missouri and also the then supreme vice-protector of the defendant order." O'Keefe testified that Warren requested him to obligate an applicant, whose name he did not remember, who wished to go home to allow his "family" to come to the meeting; that thereupon the witness, acting in his official capacity, went to the altar in the center of the lodge room and administered the obligation to such applicant, and gave him the passwords and told him that "at the next meeting he would witness the entire initiatory ceremonies." And other witnesses testified that some one was so obligated that evening in advance of the regular program.

The contention that it is necessary for Fisher to be "initiated" in some way other than by being merely obligated cannot be sustained. It is argued that the testimony of O'Keefe shows that further "initiatory ceremonies" were necessary in order to constitute Fisher a member. But plaintiff is not bound by everything that this witness may have said. Nor is there anything to make it appear that the further ceremonies thus referred to were in anywise necessary to membership in the order, or a prerequisite to the issuance of

a benefit certificate. On the contrary the by-laws provide that no benefit certificate shall be issued until the applicant is initiated into some lodge of the order, *or obligated in the first degree*. It nowhere appears that the obligation taken by Fisher was not of the requisite "degree;" and the membership certificate was issued on the strength of this obligation, as being a full compliance with the laws of the order, the applicant was thereafter treated as a member, and his dues and assessments received by defendant. Under the circumstances the defendant should not be heard to say that he did not duly become a member. [Wintergerst v. Court of Honor, 185 Mo. App. 373, 171 S. W. 346.] The cases of Porter v. Loyal Americans, 180 Mo. App. 538, 167 S. W. 578 and Gilmore v. Modern Brothers of America, 171 S. W. 629, are not authorities in support of appellant's position.

IV. Complaint is made of an instruction given for plaintiff which told the jury that if they found that Fisher did not "in fact with his own hand attach his signature to the papers in evidence, and if his name was signed thereto by some other person and he thereupon acknowledged, adopted and declared such signature as his own, such act on his part would, in law, have the effect of making it his signature with as full force and effect as if written there with his own hand."

This instruction had reference to the signing of Fisher's application for membership. The complaint against it is that it is not supported by the evidence. Plaintiff testified that her husband signed the application in his own hand; that though he could scarcely read at all she had taught him to sign his name, and that the signature was his own. However, expert testimony adduced by defendant tended to show otherwise, and to make it appear that plaintiff had signed her husband's name to the application. It is unnecessary to rehearse this testimony. It could have had no effect

other than as just stated, and was introduced for that purpose.

It is argued that if the signature in question was not made by Fisher's own hand, there is no evidence that he adopted as his own a signature signed by someone else. But it is to be inferred from the evidence that Fisher intended the signature appearing upon this paper to be taken as and for his signature in any event. If he did not sign the paper himself, the inference is that he adopted the signature appearing thereon.

There was clearly no error in the giving of this instruction.

Other questions need not be noticed. We have carefully examined the somewhat voluminous record before us and have been unable to discover any reversible error therein. The judgment should therefore be affirmed. It is so ordered. *Reynolds, P. J.*, and *Nortoni, J.*, concur.